**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 08-53104 |
| GREEKTOWN HOLDINGS, L.L.C., et al.[1] | In Proceedings Under Chapter 11 |
| Debtors. | Jointly Administered |
| _____/ | Hon. Walter Shapero |

**REPLY IN SUPPORT OF DEBTORS' SECOND MOTION FOR AN ORDER UNDER BANKRUPTCY CODE SECTION 1121(d) EXTENDING EXCLUSIVE PERIODS DURING WHICH DEBTORS MAY FILE AND SOLICIT ACCEPTANCES OF PLANS OF REORGANIZATION**

---

[1] The Debtors' bankruptcy cases are jointly administered with Greektown Holdings, L.L.C. ("Holdings") Case No. 08-53104, Greektown Casino, L.L.C. ("Greektown Casino") Case No. 08-53106; Kewadin Greektown Casino, L.L.C. ("Kewadin") Case No. 08-53105; Monroe Partners, L.L.C. ("Monroe") 08-53107; Greektown Holdings II, Inc. ("Holdings II") Case No. 08-53108; Contract Builders Corporation ("Builders") Case No. 08-53110; Realty Equity Company Inc. ("Realty") Case No. 08-53112; and Trappers GC Partner, LLC ("Trappers") Case No. 08-53111.

The above-captioned debtors (collectively, the "Debtors"), by their counsel, Schafer and Weiner, PLLC, for their reply in support of their Second Motion for an Order under Bankruptcy Code Section 1121(d) Extending Exclusive Periods During which Debtors May File and Solicit Acceptances of Plans of Reorganization (the "Motion"), state as follows:

## Introduction

Various objections have been filed in response to the Motion. One objector has already decided that only one plan is possible -- a debt-to-equity conversion of its bond debt.[2] Another objector has already concluded that the Debtors will be unable to obtain exit financing in the future.[3] Some objectors make false, misleading, and uniformed allegations that the Debtors have done nothing since the Petition Date towards a plan of reorganization and have had no discussions with any of the creditor constituencies regarding a plan.[4] Yet another objector bluntly states that no plan is possible because, unless the Debtors decide to sell their assets, that objector threatens the estate with enforcement of its alleged regulatory powers and will no longer defer to this bankruptcy court.[5]

Given the 5 page limit for this reply brief, Debtors here will focus the Court on the record before this Court and on some of the most relevant facts.

## Argument

1.  None of the objectors here objected to the entry of the final order granting debtor in possession financing in these cases (Docket No. 175) (the "Final DIP Order"). The Final DIP Order set forth certain milestones for the Debtors to follow related to multiple paths to exit

---

[2] See objection to Motion by certain noteholders (Docket No. 600, p. 5).

[3] See objection to Motion by Unsecured Creditors' Committee (Docket No. 598, p. 8).

[4] Id., *passim*; see also objection to Motion by Indenture Trustee (Docket No. 590, p.5); objection to Motion by certain noteholders (Docket No. 600, p.2); and objection to Motion by Michigan Gaming Control Board (Docket No. 601, p. 10).

[5] See objection to Motion by Michigan Gaming Control Board (Docket No. 601, pp. 16-17).

bankruptcy.[6] Those milestones include dates by which the Debtors were to have retained an investment banker (December 31, 2008), populated a data room (February 28, 2009), and either completed a bidding process leading to a sale or filed a plan of reorganization (June 1, 2009). These are milestones that the Debtors committed to at the outset of the case, without objection by any party, including the objecting parties here, all designed to allow the Debtors the opportunity to maintain all options in order to maximize value for the benefit of the estate.

2. After the Final DIP Order was entered, the City of Detroit, the Indenture Trustee, and the Creditors' Committee decided that the previously agreed-to milestones should be changed. ***In response to these requests, and to resolve the various objections filed against Debtors' first exclusivity motion to extend the exclusive periods, the Debtors accelerated the milestones, as set forth in the <u>Order to Extend Exclusive Period Which Debtor May File & Solicit Acceptance of Plan of Reorganizaion</u> (entered 9/26/08) (Docket No. 469) (the "<u>Stipulated Exclusivity Order</u>").[7]*** Those accelerated milestones include a new date by which the Debtors were to have filed a motion to retain an investment banker (October 3, 2008),[8] populated a data room (November 17, 2008),[9] and received expressions of interest through the investment banker from interested parties (January 15, 2009).[10] The Stipulated Exclusivity Order became final, just like the Final DIP Order. None of the objectors here ever sought to modify either of these orders for any reason.

---

[6] Without limitation, these paths would primarily include sales of assets, recapitalizations, or combinations thereof.

[7] The order was stipulated to by many of these objecting parties. See Stipulation By and Between The City of Detroit, Indenture Trustee, Official Unsecured Creditors' Committee, Ted and Maria Gatzaros, United States Trustee, and Debtor Re: Entry of Order Granting Debtors' Motion for an Order Under Bankruptcy Code Section 1121(d) Extending Exclusive Periods During Which Debtors May File and Solicit Acceptances of a Plan or Reorganization (Docket No. 466))

[8] A 90 day acceleration.

[9] A 103 day acceleration.

[10] A 105 day acceleration.

3. The Debtors performed under the terms of the Stipulated Exclusivity Order by retaining Moelis & Company, LLC ("Moelis") as its investment banker, within the accelerated milestone dates. The Debtors gave the objecting parties the opportunity to comment on the proposed selection of Moelis and the specific terms of the proposed Moelis engagement. None of the objectors objected *per se* to the selection of Moelis, and in fact supported the retention of this seasoned investment banker with deep gaming experience. Furthermore, the Debtors gave the objecting parties the opportunity to review the proposed terms of the Moelis engagement letter, and many of the objectors submitted written comments and also redlined changes with numerous additions and deletions from the terms of the proposed retention, some filing objections to the application to preserve their rights with respect to those requested changes. Debtors negotiated these changes, made multiple revisions to the proposed engagement letter, and submitted a stipulated order with many[11] of the objecting parties here (the "Moelis Retention Order").[12] Per the terms of Moelis' engagement letter, Moelis was primarily retained to identify, review, negotiate, evaluate and initiate a Reorganization, including, but not limited to, evaluating alternative proposals for a Restructuring Transaction, Sale Transaction or Capital Transaction (or any combination thereof) (as those terms are defined in the Moelis engagement letter) (see Docket No. 493). Moelis has proceeded promptly and professionally with its duties and responsibilities.

4. The Debtors have successfully complied with every milestone, accelerated or otherwise. Yet, the Debtors are now faced with new objections from these same parties, arguing

---

[11] Only Mr. and Mrs. Gatzaros, who have not objected to this Motion, did not consensually resolve their objection to the retention of Moelis with the Debtors. Their objection was overruled by the Court at the hearing on the application.

[12] See Stipulation as to the Form of the Order Authorizing the Employment of Moelis & Company, LLC as Investment Banker to the Debtors (Docket No. 512) and Order Granting Application to Employ [sic] Thane Carlston of Moelis & Company LLC as Investment Banker (Docket No. 514).

that meeting accelerated milestones they themselves agreed to does not support an additional 60 day exclusivity extension.[13]

5. Since this type of objection is likely to fail, the objecting parties now complain that the Debtors have not, and do not intend to, reach out to creditors to negotiate the terms of a plan of reorganization. Nothing could be further from the truth. Ironically, none of these parties have ever initiated any meeting with the Debtors to discuss what they want to see in a plan of reorganization. Notably, one creditor who has not filed an objection to this Motion has in fact come forward with a proposal to finance a plan of reorganization, and the Debtors are presently engaged in ongoing and substantive plan discussions and negotiations with that creditor.

6. The Debtors request the present 60 day extension to allow the Debtors' investment banking process to be conducted in accordance with the Stipulated Exclusivity Order, which incorporates the Moelis engagement letter designed to maximize value for the estate. This process *includes* holding discussions with exiting creditors on possible alternatives available to serve as the basis for a plan of reorganization, *which discussions are well underway with the only creditor who has come forth with a proposal*. Only now, by written objection to the Motion, do certain parties begin to put forward proposals to the Debtors.[14] During the requested 60 day exclusivity request, the Debtors would be only too happy to discuss those proposals with those parties, if those parties are willing to participate in a constructive plan process. In contrast, terminating exclusivity now would sidetrack the very process, using the very same timelines agreed to by the Debtors and the objecting parties in mid-September.

7. Again, the Debtors will not attempt here to isolate each specific factual

---

[13] In the Stipulated Exclusivity Order, the objectors agreed that the Debtors must begin to solicit expressions of interest by December 15, 2008 and continue that solicitation for 30 days, to January 15, 2009, when all expressions of interest would be due. These same parties now object to extending plan filing exclusivity to February 15, 2009, only 30 days after expressions of interest are due.

[14] See objection to Motion by certain noteholders (Docket No. 600, p. 5).

inaccuracy in the objections. However, particularly bothersome are the patently false accusations from the Creditors' Committee that the Debtors failed to solicit their input with respect to the ongoing process to change Debtors' management board. In truth, the Debtors did solicit comment from the Committee for any names they wanted the Debtors to consider. The Committee failed to suggest a single name. To protect the privacy of the prospective board members until the Michigan Gaming Control Board approval process is complete, the Debtors could not disclose the proposed candidates by name, but did give descriptions of the board members' backgrounds, including to the DIP Lender and the Committee. With respect to the search for a new CEO (after Mr. Ghelfi's recent retirement), the Debtors solicited input from all of the objecting parties, and have kept both the DIP Lender and the Committee continuously updated on that process, and sought their input on the candidates being interviewed by the Debtors.

8. In the final analysis, the requested 60 day extension, which gives the Debtors 30 days following the stipulated deadline for submissions of interest, is the best way forward in this process and is calculated to lead to an exit from bankruptcy protection that maximizes the value of the Debtors estate for all parties in interest. See In re Big Rivers Electric Corporation, 233 B.R. 739, 751-752 (W.D. Ky 1998) (debtor-in-possession owes a fiduciary duty to all its creditors to maximize the value of the estate.) The Debtors' role as fiduciary charged with maximizing value for the estate as a whole should be given deference over the single-minded attempts of specific creditors and parties in interest who wish to advance their own private agendas (expressed or hidden).

**WHEREFORE**, the Debtors respectfully request that this honorable Court enter an order substantially in the form annexed to the Motion granting the relief requested therein.

Respectfully submitted:

SCHAFER AND WEINER, PLLC

By: /s/ Brendan G. Best
DANIEL J. WEINER (P32010)
MICHAEL E. BAUM (P29446)
BRENDAN G. BEST (P66370)
Counsel for Debtors
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
bbest@schaferandweiner.com

Dated: November 16, 2008