UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:                                                      Case No. 08-53104

GREEKTOWN HOLDINGS, L.L.C., et al.                          Chapter 11
                                                            Jointly Administered
       Debtors.
                                                            Hon. Walter Shapero
_____/

## OPINION DENYING MOTION BY JENKINS/SKANSKA VENTURE, L.L.C. TO REQUIRE DEBTORS TO ASSUME THE CONSTRUCTION CONTRACT BETWEEN GREEKTOWN CASINO, L.L.C. AND JENKINS/SKANSKA VENTURE, L.L.C. AND TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PROTECTION [DOCKET NO. 541]

This matter is before the Court upon the motion of Jenkins/Skanska Venture, L.L.C. ("Jenkins/Skanska") in which it seeks to compel Debtors to assume or reject the construction contract between itself and Greektown Casino, L.L.C. and, if assumed, provide adequate assurance of future performance.[1] (Docket No. 541). The motion is opposed by the Debtors, as well as creditor Merrill Lynch Capital Corporation, in its capacity as administrative agent for the DIP Lenders and pre-petition secured parties. (Docket Nos. 584 and 586). For the reasons set forth below, the Court denies the motion.

*I. FACTUAL BACKGROUND*

On May 29, 2008, Greektown Holdings, L.L.C. and a number of related entities filed for relief under chapter 11 of the Bankruptcy Code. (Greektown Holdings, L.L.C. and its related entities, including Greektown Casino, L.L.C. are collectively referred to as "Debtors"). At the time of filing, Debtors were in the process of completing an expansion of their facilities, including construction of a hotel, parking garage, and numerous improvements to the casino

---

[1] Although the motion in some parts appears to be seeking to compel the Debtors to assume the contract now and provide adequate assurance of future performance, counsel for Jenkins/Skanska clarified at the November 6, 2008 hearing that the relief actually being sought is acceleration of the date that Debtors would otherwise be compelled to assume or reject the contract and, incident thereto, provide adequate assurance of future performance as the statute requires if assumption is sought.

-1-

complex. Pursuant to the construction contract entered into between Debtors and Jenkins/Skanska on October 3, 2002, Jenkins/Skanska is the general contractor on the expansion project. The project is still underway, with completion expected sometime in early February 2009.

On the petition date, Debtors were in payment default under the terms of the construction contract. Sub-contractors were leaving and/or intending to leave the project due to lack of payment, with substantial adverse consequences to Debtors' business. Debtors filed a motion seeking authorization to pay claims of certain construction contractors. (Docket No. 39). After a hearing, the Court entered an order authorizing construction payments on June 4, 2008. (Docket No. 73). As a condition of receiving payment under the June 4 Order, a contractor (including Jenkins/Skanska) was required to execute a written agreement confirming that it would continue to work under the terms and conditions of its contract during the pendency of the bankruptcy proceedings. Jenkins/Skanska received payment in the amount of $23,806,886.63 and executed its "Contractor Agreement to Continue to Provide Construction and Other Services." (Docket No. 586, Exh. 2).

On June 26, 2008, the Court entered the Final DIP Order allowing the Debtors to enter into the DIP Facility. (Docket No. 175). This facility provided for financing in an aggregate principal amount of $150,000,000.00, consisting of a Tranche A delayed-draw term loan in the amount of $135,000,000.00 for construction of the expansion project, and a Tranche B revolving loan in the amount of $15,000,000.00 for construction and/or operating costs in accordance with the budget. Debtors have used this DIP facility to pay Jenkins/Skanska the amounts owed under the construction contract as they become due.

On October 22, 2008, Jenkins/Skanska brought the instant motion seeking to compel the Debtors to assume or reject the construction contract. Debtors and Merrill Lynch objected to the motion and a hearing was held on November 6, 2008. Based on statements made at the hearing, the issue presently before the Court is whether to accelerate the date by which Debtor must make a decision to assume or reject the subject contract and, if so, what that date should be.[2] The

---

[2] An order extending Debtor's exclusive period to file a plan and disclosure statement to February 1, 2009 was entered on December 3, 2008. (Docket No. 650). If a plan and disclosure statement is filed, confirmation will be scheduled in due course thereafter.

Court has determined that an evidentiary hearing is not necessary to properly dispose of these questions.

## II. DISCUSSION

Section 365(d)(2) of the Bankruptcy Code permits a debtor-in-possession to assume or reject an executory contract at any time prior to confirmation of a plan. However, on request of a party to such a contract, the court may order the debtor to make that decision within a specified period of time. 11 U.S.C. § 365(d)(2). "In deciding whether to accelerate the debtor's decision, the court must balance the interests of the contracting party against the interests of the debtor and its estate." *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001) (internal citations omitted). The moving party has the burden to justify accelerating the timeframe within which the debtor can assume or reject. *In re Republic Technologies International*, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001)

Jenkins/Skanska contends that several reasons support acceleration of the date by which the Debtor must assume or reject the contract. First, the presence of "payment risks" in the form of lack of protection for Jenkins/Skanska in the event: (1) that the expansion project costs more than the $150,000,000.00 available from the DIP facility (or $135,000,000.00 if Tranche B is used for operating costs); or (2) that Debtors default under the terms of the DIP loan and the DIP lenders exercise their right to cease funding. Due to the payment schedule terms of the construction contract, Jenkins/Skanska alleges it could be owed $25,000,000.00 to $30,000,000.00 at any one time. Moreover, Jenkins/Skanska is concerned that when the expansion project is completed, Debtors and their DIP lenders will have little incentive to pay the amounts owing under the construction contract, and Jenkins/Skanska will be forced to institute costly lien litigation in order to receive payment. Finally, Jenkins/Skanska asserts that the existence of the DIP facility is not sufficient to satisfy the following provision of the construction contract, and the Debtors are thereby in default:

> 2.2.1 The Owner shall, at the written request of the Contractor prior to the commencement of work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the

08-53104-mlo    Doc 705    Filed 12/16/08    Entered 12/17/08 07:25:53    Page 3 of 5

> Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

Jenkins/Skanska does not allege the existence of any other defaults by Debtors under the construction contract.

Debtors object to Jenkins/Skanska's contention that there is a default under Paragraph 2.2.1 of the construction contract. Debtors assert that the DIP facility satisfies this provision. The Court need not address this disagreement at the present time because even if a default was determined to exist under the above provision, it is not of such a nature that would justify the relief Jenkins/Skanska seeks.

While the Court understands Jenkins/Skanska's concerns, such concerns, even if entirely legitimate, are not sufficient to satisfy its burden of proof in this matter for a number of reasons: (1) There is no allegation of post-petition payment defaults, Jenkins/Skanska has received each payment as it has come due. The pre-petition payment defaults were cured early in the case and Jenkins/Skanska is in exactly the position it could have expected to be in at the time the contract was entered into with regards to payments being paid as they come due. Through the instant motion, Jenkins/Skanska is in essence seeking to secure more favorable assurances with regard to payments than those included in the construction contract itself by trying to bring into play their view of what adequate assurance of future performance might need to be *if*, and when, the contract is assumed – something that has not yet occurred. Jenkins/Skanska's dissatisfaction with the deal that it struck with Debtors is not grounds for accelerating assumption or rejection. *See*, *e.g*. *In re Physician Health Corp.*, 262 B.R. 290, 294 (Bankr. D. Del. 2001); *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385, 389 (Bankr. W.D. Pa. 1985). (2) There seems to be some disagreement as to what exactly are the final and complete terms of the construction contract itself, a circumstance which presents at least a preliminary barrier to its assumption or rejection at the moment, and there is insufficient time if that disagreement requires Court resolution to resolve the question, before the normal unaccelerated time for Debtor to assume or reject is upon us. (3) The project covered by the construction contract is due by its apparent terms to be completed in January or February 2009, a situation unlike the more usual kind of executory contract which often extends for a material period beyond when a plan might ordinarily be

confirmed; the confluence of the completion date under the contract and the normal date for assumption or rejection works against accelerating that assumption date, particularly under the financing and other circumstances of this case. If the date was accelerated and the Committee or some other interested party objected to Debtors' decision and hearings were required, it is extremely unlikely that the issue could be disposed of before the normal assumption date is reached (and the current question thereby likely rendered moot); and if the construction contract is assumed under a proposed plan, any issue related to such assumption would be better addressed in the context of a confirmation. (4) One would assume that all amounts owed for post-petition work under the construction contract are administrative expenses with their attendant priority of payment in any event. (5) Jenkins/Skanska retains whatever lien rights it is afforded by law. Accordingly, for the indicated reasons, the Court is unable to conclude that Jenkins/Skanska has sustained its burden of showing an adequate basis for the relief it seeks, and the motion is thereby DENIED.

      The Court will enter an order consistent with this Opinion.

**Signed on December 16, 2008**

                                        **/s/ Walter Shapero**
                                **Walter Shapero**
                                **United States Bankruptcy Judge**