UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 08-53104

GREEKTOWN HOLDINGS, L.L.C., et al.[1]                     In Proceedings Under
                                                          Chapter 11
                    Debtors.                              Jointly Administered

_____/                  Hon. Walter Shapero


### SECOND MOTION FOR ORDER APPROVING FINANCING OF INSURANCE PREMIUMS UNDER 11 U.S.C. §§ 363 and 364

The above-captioned debtors (collectively, the "Debtors"), for their Second Motion for Order Approving Financing of Insurance Premiums under 11 U.S.C. §§ 363 and 364 (the "Second Motion"),[2] state as follows:

### Summary

Debtors request authorization from the Court pursuant to 11 U.S.C. § 363 and 364 to enter into a proposed premium financing agreement to finance the payment of premiums of the majority of Debtors' insurance policies.

### Jurisdiction

1. The Court has jurisdiction over this Second Motion pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] The Debtors' bankruptcy cases are jointly administered with Greektown Holdings, L.L.C. ("Holdings") Case No. 08-53104, Greektown Casino, L.L.C. ("Greektown Casino") Case No. 08-53106; Kewadin Greektown Casino, L.L.C. ("Kewadin") Case No. 08-53105; Monroe Partners, L.L.C. ("Monroe") 08-53107; Greektown Holdings II, Inc. ("Holdings II") Case No. 08-53108; Contract Builders Corporation ("Builders") Case No. 08-53110; Realty Equity Company Inc. ("Realty") Case No. 08-53112; and Trappers GC Partner, LLC ("Trappers") Case No. 08-53111.

[2] Debtors previously filed their first Motion for Order Approving Financing of Insurance Premiums under 11 U.S.C. §§ 363 and 364 [Docket No. 815, January 29, 2009]. That motion was granted by order of the Court on February 17, 2009. See Docket No. 853. This Second Motion is substantially similar to the first motion in all respects.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3. Venue of this proceeding and the Second Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**Background**

4. On May 29, 2008 (the "Petition Date"), the Debtors commenced a case under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their assets as Debtors-in-Possession.

5. On January 22, 2010, the Court confirmed the Second Amended Joint Plans of Reorganization [Docket No. 1907] (the "Confirmed Plan"). See Docket No. 2046 (the "Confirmation Order"). The effective date of the Confirmed Plan has not yet occurred.

6. To continue to comply with various laws, regulations, rules, guidelines, and lending covenants, the Debtors must maintain insurance coverage for a number of different categories of liability (the "Insurance Coverage"), including crime liability, general liability, liquor liability, automobile liability, directors and officers liability, garagekeepers legal liability, and employment practices liability, as well as umbrella coverage for the Liabilities. The Debtors' Insurance Coverage and its umbrella policy were set to expire on January 15, 2010; and Debtors obtained replacement policies from their insurers (the "Insurers") for the upcoming year on January 12, 2010. See Policy Binders (the "Policies") attached to Exhibit 2, the premium financing agreement.[3]

---

[3] The directors and officers and workers' comp related Policy binders are not included, as the Debtors are not financing the premium payment for the directors and officers Policy, which has been paid in full.

7. To finance the payment of the premiums due pursuant to the majority[4] of the Debtors' Policies (the "Premiums"), Debtors have obtained a premium financing commitment from Universal Premium Acceptance Corporation ("UPAC")[5]. See **Exhibit 2**, Premium Finance Agreement and Disclosure Statement (the "Agreement") (terms and conditions incorporated herein). The following is a summary of the key terms of the Agreement:

- Total Premiums Financed: $1,489,988.98
- Down Payment: $589,367.96
- Amount Financed: $900,621.02
- Finance Charge: $15,038.89 (3.99%)
- 9 monthly payments of $101,739.99 each, beginning on 2/15/10
- Security interest in the insurance policies being financed
- Late charge of 5%
- Prepayment allowed and entitles Debtor to a refund of part of the finance charge
- Selected terms and conditions:
    - Grants UPAC power of attorney to arrange for payment and/or cancellation of insurance policies
    - In the event of a default, UPAC may cancel after 10 days notice and cure period.
    - Policies shall not be assigned or encumbered.
    - Debtor submits to jurisdiction of Kansas for all disputes relating to the financing agreement.

8. The Insurers issued the Policies on a preliminary basis, reserving the right to issue notices of cancellation pending payment of the full premium. If cancellation

---

[4] See footnote 3 supra.
[5] Id.

notices are issued and Debtors do not pay the full amounts of the Premiums prior to the termination date, the Policies will terminate. In effect, the Debtors have obtained a short-term extension of its insurance policies to permit adequate time to arrange premium financing. Without the financing proposed in the Agreement, the Debtors may be required to pay the full amount of the Premiums immediately.

9. Previously, Debtors have typically financed their premium payments, as they propose to do in this Second Motion. See **Exhibit 3**, 2009 Premium Finance Agreements. See also Order Granting Debtors' Motion for Order Approving Financing of Insurance Premiums under 11 U.S.C. §§ 363 and 364 [Docket No. 853, February 17, 2009].

10. Debtors are party to the DIP Facility with the DIP Lenders, who are secured by the DIP Collateral, all as defined in the Order (I) Authorizing Post-Petition Secured and Superpriority Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 503(b) of the Bankruptcy Code; (II) Authorizing Debtors to Pay in Full All Outstanding Amounts Under Original DIP Financing and Obtain Additional Loan Commitments; (III) Authorizing the Debtors to Use Cash Collateral; (IV) Providing Adequate Protection to the Pre-Petition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code; and (V) Modifying the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code [Docket No. 1961, December 29, 2009]. The DIP Facility contains, among other provisions, a general negative covenant against new liens and additional indebtedness. However, the DIP Credit Agreement contains exceptions that may cover the premium financing requested by this Second Motion. These exceptions include the allowance of

certain "Existing Indebtedness" as well as the inclusion of a lien granted pursuant to First Premium Financing Order within the definition of a "Permitted Lien" (both as a lien related to Existing Indebtedness as well as specifically as the lien granted in connection with the premium financing itself). Debtors are seeking the express consent of the new DIP Lenders regarding the Second Motion and anticipate obtaining that consent prior to the hearing on the Second Motion.

### Argument

11. Pursuant to section 364(b), the Court may authorize the Debtors to obtain unsecured credit allowable as an administrative expense under section 503(b)(1). UPAC is unwilling to extend credit to the Debtors unless any amounts not covered by UPAC's security interest are given administrative expense status.

12. UPAC is not willing to provide credit to the Debtors without obtaining a security interest in the Premiums, and the Debtors have been unable to obtain credit otherwise.

13. The Debtors have not yet obtained any rights to the proceeds of the Policies (*i.e.,* the Premiums), and therefore, the Premiums may not be subject to any lien.

14. Pursuant to section 364(c)(2) of the Bankruptcy Code, the Court may authorize the Debtors to obtain credit "secured by a lien on property of the estate that is not otherwise subject to a lien."

15. In the event that the proceeds of the Policies *are* subject to the liens of the DIP Lenders, the DIP Lenders have agreed to permit the lien. 11 U.S.C. § 364(d)(1), which governs the incurrence of post-petition debt secured by senior or "priming" liens, provides that the Court may, after notice and a hearing:

authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if —

> (A) the trustee is unable to obtain credit otherwise; and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

As stated above, the DIP Credit Agreement contains a specific waiver and allowance of the premium financing requested in this Second Motion.

16. In the Debtors' best business judgment, execution of the attached Agreement is a reasonable and necessary means for the Debtors to obtain insurance, which the Debtors require for the protection of all interested parties.

17. The Debtors also request that the Court authorize the Debtor to execute the Agreement in order to maintain insurance coverage under section 363(b), which provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. §363(b)(1). To do so, the debtor must articulate some business justification. In this case, maintaining the Debtor's insurance coverage of its business is extremely important to preserving the Debtor's assets and is also required by the U.S. Trustee's office—both of which are legitimate business justifications.

### The Necessity of an Expedited Hearing

18. The Debtors urgently require financing to maintain the coverage under the Policies. As explained above, if the Debtors do not obtain the financing quickly, the Debtors' Policies may terminate without full payment of the Premiums.

19. Accordingly, the Debtors are filing, contemporaneously with this Second Motion, a motion for an expedited hearing on February 22, 2010 at 11:00 a.m., the date

and time scheduled for the February omnibus hearing in these cases.

## Conclusion

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit 1**, to approve the Agreement.

Respectfully submitted,

SCHAFER AND WEINER, PLLC

By: /s/ Brendan G. Best
DANIEL J. WEINER (P32010)
BRENDAN G. BEST (P66370)
Counsel for Debtors
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
bbest@schaferandweiner.com

Dated: February 15, 2010

# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 08-53104 |
| GREEKTOWN HOLDINGS, L.L.C., et al.[1] | In Proceedings Under Chapter 11 |
| Debtors. | Jointly Administered |
| _____/ | Hon. Walter Shapero |

## ORDER APPROVING SECOND MOTION FOR FINANCING OF INSURANCE PREMIUMS UNDER 11 U.S.C. §§ 363 AND 364

Upon the second motion of the above-captioned debtors (collectively, the "Debtors") for an order approving financing of insurance premiums under 11 U.S.C. §§ 363 and 364 (the "Second Motion");[2] it is hereby

ORDERED THAT the Second Motion is granted in its entirety; and

IT IS FURTHER ORDERED THAT Debtors are authorized to execute and be bound by the terms and conditions set forth in the Agreement to the extent allowable pursuant to 11 U.S.C. § 364, provided that any lien granted to UPAC pursuant to the Agreement to secure the obligations of the Debtors thereunder covers only the actual amount of the Premiums to be refunded to the Debtors and no other DIP Collateral; and

---

[1] The Debtors' bankruptcy cases are jointly administered with Greektown Holdings, L.L.C. ("Holdings") Case No. 08-53104, Greektown Casino, L.L.C. ("Greektown Casino") Case No. 08-53106; Kewadin Greektown Casino, L.L.C. ("Kewadin") Case No. 08-53105; Monroe Partners, L.L.C. ("Monroe") 08-53107; Greektown Holdings II, Inc. ("Holdings II") Case No. 08-53108; Contract Builders Corporation ("Builders") Case No. 08-53110; Realty Equity Company Inc. ("Realty") Case No. 08-53112; and Trappers GC Partner, LLC ("Trappers") Case No. 08-53111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Second Motion.

IT IS FURTHER ORDERED THAT the rights of UPAC pursuant to this Order and the Agreement shall be maintained in the event that one or more of these cases are converted to cases under Chapter 7 of the Bankruptcy Code; and

IT IS FURTHER ORDERED THAT this Order constitutes a final order notwithstanding anything to the contrary in Federal Rule of Bankruptcy Procedure 4001(c)(2).