UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

GREEKTOWN HOLDINGS, LLC, *et al.*[1],

Debtors.

_____/

Case No. 08-53104
Chapter 11
Jointly Administered
Hon. Walter Shapero

## AMENDED MEMORANDUM OPINION GRANTING REORGANIZED GREEKTOWN'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO RESERVES

The matter underlying the captioned Motion is a claim by Moelis & Company, L.L.C., ("Moelis") for an additional investment fee arising out of its role and contract as an investment banker. It is essentially a contract dispute. Incident to permitted discovery in the proceedings relating to that dispute, there came to light documents indicating that Debtor and/or Reorganized Greektown in their financial statements, including as part of public filings of one sort or another, set up, referred to, or provided for reserves dealing with the contingency that Moelis might prevail on its claim for the additional investment fee. The likelihood that Moelis was going to attempt to produce such at trial as evidence in support of its claim, caused the subject Motion to be filed.

The evidentiary relevancy of the establishment of a reserve in connection with a potential liability, to the existence or determination of that liability, has most often come up in cases involving reserves set up by insurance companies. It has come up in various procedural contexts such as actions to preclude its discovery in the first instance, or motions in limine, after discovery, as in this case, or possibly as an evidentiary admissibility question during the trial on the liability issue.

---

[1]The Debtors in these jointly administered cases include Greektown Holdings, L.L.C. ("Holdings"); Greektown Casino, L.L.C. ("Greektown Casino"); Greektown Holdings II, Inc. ("Holdings II"); Contract Builders Corporation ("Builders"); Realty Equity Company Inc. ("Realty")' and Trappers GC Partner, LLC ("Trappers").

1

Reorganized Greektown argues that, akin to the insurance reserves in those cases and/or pursuant to a ruling it sees as favorable to it in a bankruptcy case involving financial statement reserves, the proposed reserves evidence is not relevant to the issue of liability under the contract and thus its Motion should be granted. Moelis argues that FRE 410's broad definition of relevance is such that the reserves evidence is admissible and that it would then be up to the Court to decide, in light of all of the other evidence, what weight, if any, it should be given in deciding the liability issue.

In the indicated insurance company cases, particularly those where bad faith by the insurer was not an issue and where the underlying issue was one of coverage in an action between the insured and insurance company, the courts have generally excluded that evidence, either at the discovery, or some later stage in the proceedings. Various rationales for those decisions have been set forth. For instance, there is the statement in *Sundance Cruises Corp., et. al. vs. The American Bureau of Shipping*, 1992 WL 75097 (S.D. N.Y. 1992) where the court stated:

> First, to the extent reserves are "an indication of potential liability" by insurers, as argued by plaintiffs, they might be based in large part upon the opinions of counsel and would, therefore, be protected from disclosure. Indeed, much of the material concerning reserves in the documents submitted to me indicates specifically counsel's recommendation as to the reserve that should be established and as to whether a reserve should be established at all.
>
> But, moreover, these reserves are, simply, **not relevant**. Defendant's assessment or its underwriter's assessment or its counsel's assessment of exposure to liability in this or prior cases has nothing to do with whether here there is liability. Furthermore, to allow evidence of the amount of reserves set aside for any particular incident would get this trial into mini-litigations over what was in the minds of the persons who set the reserve to uncover why each particular reserve was set (which would likely have depended on various factors besides an assessment of potential liability).

In *U. S. Fire Ins. Co. vs. The City of Warren*, 2012 WL 1454008 (E.D. Mich. 2012), the court stated:

> Thus, neither the existence nor amount of a reserve fund has any bearing on the legal question of coverage, which is determined by the language of the insurance contract. For this reason, the courts routinely find such information not discoverable under Rule 26 because it is neither relevant nor calculated to lead to the discovery of admissible evidence. Further, in Michigan, as in other states, reserves are both required and regulated by state law. In other words, state law "establish[es] reserve policy. For this reason alone, a reserved cannot accurately or fairly be equated with an admission of liability or the value of any particular claim." <u>In re Couch, 80 B.R. 512, 517 (S.D.Cal.1987)</u>. Accordingly, the City is not entitled to discovery of reserve information.
>
> The same holds true with respect to the documents, sought by the City, reflecting communications between the companies and any reinsurers. Similar to reserves, reinsurance involved a business decision, not a legal determination regarding policy interpretation or coverage.

(internal citations omitted). <u>see also</u> *Rhone-Poulenc Rorer, Inc. vs. Home Indemnity Co.*, 139 F.R.D. 609, 613 (E.D. Pa. 1991) (request for reconsideration denied in this aspect, 1991 WL 237636); *Indep. Petro Corp. vs. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.C. 1986). Courts have also expressed concerns based on work product and/or attorney-client privilege grounds, though such have not been raised in this case. This Court associates itself with those insurance reserve cases and other reserve cases and does not find any meaningful distinction for purposes of relevance to an issue of contractual interpretation between an insurance company reserves and ones such as appear in the financial statements at issue in this case. Public policy is implicated here as well. In that respect, Movants cite *In Re Adelphia Communications Corp.*, 342 B.R. 142 (Bank. S.D. N.Y. 2006) (vacated on other grounds, 2008 WL 3919198 (S.D. N.Y. 2008)), which was a case involving financial statement reserves. After noting that "it is the content of the contracts themselves that is

3

determinative." That court, cogently and appropriately in the view of this Court, also stated, "the Court is also persuaded by the objectors' points that allowing the admission of financial accounting reserves to prove liability would pose a disincentive to responsible accounting." To the same effect in an insurance reserve situation, <u>see also</u> *J. C. Associates vs. Fidelity & Guaranty Insurance Company*, 2003 WL 1889015 (D.C.T. D.C. 2003) where the court stated: "whatever societal interest there is in the accuracy of reserves is foregone if insurance companies yield to the temptation to state them inaccurately, lest they be used as damaging admissions against their interests."

Despite the tendency in bench trials to err on the side of allowing in evidence for what it is worth, this Court concludes that the policy concerns expressed in these latter cases when combined with the conclusions reached in the cited insurance reserve cases favor the granting of the Motion.

Accordingly, the Motion in Limine is granted and Movant shall present an appropriate order.

**Signed on April 11, 2013**

                                         **/s/ Walter Shapero**
                                         **Walter Shapero**
                                         **United States Bankruptcy Judge**