UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

    Greektown Holdings, L.L.C., et al.,

    Reorganized Debtors.

_____/

Case No. 08-53104
Chapter 11
Hon. Walter Shapero

## OPINION DECLARING TAX EFFECTS OF PLAN PURSUANT TO 11 U.S.C. § 1146(b)

### I. INTRODUCTION

The matter before the Court is Reorganized Greektown Holdings, L.L.C.'s Motion for an Order and Judgment Declaring Tax Effects of the Plan pursuant to 11 U.S.C. § 1146(b) (Docket No. 2795) (the "Motion"). In the Motion, Greektown Holdings L.L.C. ("Greektown") requests that the Court enter an order and judgment declaring that (1) 98.5938% of Greektown's cancellation of indebtedness income ("COD Income") is not subject to the Michigan Business Tax ("MBT") or any component thereof, and (2) Greektown's basis in assets, net operating losses, or any other tax attributes will not be reduced for MBT purposes due to the fact that all or substantially all of Greektown's COD Income is not subject to MBT. The State of Michigan Department of Treasury ("Department of Treasury") filed an Objection to the Motion (Docket No. 2878), requesting that the Court deny it and enter an order and judgment declaring that (a) Greektown's COD income is subject to the MBT "gross receipts" tax component of the MBT, (b) Greektown's basis in assets, net operating losses, or any other tax attributes will be reduced for MBT purposes under the "business income" component as authorized by 11 U.S.C. § 346(j)(2). In the alternative, the Department of Treasury argues that the Court should abstain from deciding this issue. The Court held a hearing and took the matter under advisement.

1

## II. BACKGROUND AND FACTS

On May 29, 2008, the Debtors each filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On June 13, 2008, the Bankruptcy Court entered an order under Bankruptcy Rule 1015(b) jointly administering the Chapter 11 cases under the lead case, Greektown Holdings, L.L.C., Case No. 08-53104.

On December 7, 2009, the Noteholder Plan Proponents filed the Plan. On January 22, 2010, the Bankruptcy Court entered an Order Confirming the Plan (Docket No. 2046) (the "Confirmation Order"), and the effective date of the Plan was June 30, 2010. The Plan provided that all debt not paid would be discharged. Greektown's financial statements indicate that it will have approximately $120,000,000 in cancellation of indebtedness ("COD").

Under the Plan, the ownership interests in Greektown Holdings held by its former members were extinguished and Greektown Superholdings, Inc. and Greektown Newco Sub, Inc. (new entities formed pursuant to the Plan) became the sole members of Greektown Holdings. The former members of Greektown Holdings, whose membership interests were extinguished upon consummation of the Plan, were Monroe Partners, L.L.C. ("Monroe") and Kewadin Greektown Casino, L.L.C. ("Kewadin"). Monroe and Kewadin each held a 50% membership interest in Greektown Holdings. Kewadin is a limited liability company whose sole member is a tribal authority established by the Sault Ste. Marie Tribe of Chippewa Indians (the "Tribe"). Monroe is a limited liability company. 97.1875% of membership interests in Monroe are owned by Kewadin and the remaining 2.8125% are owned by several individuals.

On May 28, 2010, Greektown and the Noteholder Plan Proponents filed a Motion for Order Authorizing Noteholder Plan Proponents and/or Reorganized Greektown to Request Determination by State of Michigan Department of Treasury of Tax Effects of Plan (Docket No. 2467) ("Initial Tax Motion"). On June 17, 2010, the Court granted the Initial Tax Motion and

authorized Greektown and the Noteholder Plan Proponents to request a legal determination from the Department of Treasury concerning the tax effects of the Plan under 11 U.S.C. § 346 and the Michigan Business Tax Act, MCL 208.1101 *et seq*. (Docket No. 2513). That Order provided, in part: "In the event of an actual controversy, any of the Noteholder Plan Proponents and/or Reorganized Greektown . . . shall be authorized to seek any appropriate additional relief as to the matters set forth herein, including a declaration by this Court of such tax effects; and [t]he Court shall retain jurisdiction to hear and determine all matters arising from or related to the foregoing and the implementation of this Order."

On August 10, 2010, Greektown formally requested technical advice from the Department of Treasury, seeking confirmation of its position that (1) its COD income in bankruptcy "is not subject to MBT or any component thereof", and (2) its "basis in its assets, net operating losses or any other tax attributes will not be reduced, for MBT purposes, on account of the fact that [Greektown] Holdings' COD [income] in bankruptcy is not subject to MBT." In a letter opinion dated September 28, 2010, the Department of Treasury determined that the exclusion of COD income from state taxation set forth in 11 U.S.C. § 346(j)(1) applied to the Business Income Tax ("BIT"), as a "tax on or measured by income," but not the Modified Gross Receipts Tax ("MGRT"). According to the Department of Treasury, the MGRT is not a "tax on or measured by income," despite the "fact that certain deductions and exclusions from gross receipts are permitted in calculating" the tax base. The Department of Treasury based its decision on the fact that the BIT and the MGRT are "calculated differently, and the tax bases are imposed at wholly different rates," and because the MBT provides that the MGRT's purpose is the impose a tax "upon the privilege of doing business and not upon income or property." With respect to the question concerning Greektown's tax attributes, the Department of Treasury

concluded that, although 11 U.S.C. § 346(j)(2) does "not mandate" a reduction of Greektown Holdings' tax attributes, that section "should be read to permit, and not prohibit, a reduction in a debtor's tax attributes under the applicable state law where the debtor is able to exclude COD income for some reason other than the applicability of Section 108(a)."

After receiving the Department of Treasury's decision, Greektown filed its Motion for an Order and Judgment Declaring Tax Effects of the Plan pursuant to 11 U.S.C. § 1146(b) (Docket No. 2795) in this Court. The State of Michigan Department of Treasury ("Department of Treasury") filed an Objection to Greektown's Motion (Docket No. 2878).

### III. DISCUSSION

#### A. Abstention Pursuant to 28 U.S.C. § 1334(c)(1)

The Department of Treasury has asked this Court to abstain from hearing this matter under 28 U.S.C. § 1334(c)(1). In determining whether to abstain under § 1334(c)(1), the Court must analyze whether "the interest of justice, or in the interest of comity with the State courts or respect for State law" support abstention. Courts have listed the following non-exclusive factors as relevant:

> (1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of this court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; and (13) any usual or other significant factors.

*Kmart Creditor Trust v. Conway (In re Kmart Corp.)*, 307 B.R. 586, 596-97 (Bankr. E.D. Mich. 2004) (J. McIvor) (citations omitted).

Dealing specifically with the relevant noted factors: (1) efficient administration of the bankruptcy estate will not be affected by abstention because this matter does not appear to affect any of the other matters at issue pending in the bankruptcy case; (2) both state law and bankruptcy law are involved, but the ultimate issues in this matter relate to the interpretation of what is considered a "tax on or measured by income" under 11 U.S.C. § 346(j)(1), an issue that is predominately a bankruptcy law issue; (3) although there is some difficult or unsettled state tax law involved, the Court believes that the issue here is not truly an interpretation of state law, but, as noted, rather an interpretation of § 346(j)(1) of the Bankruptcy Code; (4) there is no related proceeding commenced in the state court or any other non-bankruptcy court, so this factor is not relevant; (5) this Court has jurisdiction over this case, not only under 28 U.S.C. § 1334, but also under the confirmed Plan; (6) and (7) neither are particularly relevant in this situation; (8) it is "feasible" to sever the claims in the sense that it is possible to have the state court determine whether the COD income is taxable under state law, but the ultimate issue as stated involves an interpretation of § 346(j)(1), which is uniquely a bankruptcy issue; (9) while this Court's docket is heavy, there is nothing in the record which indicates that it could not efficiently dispose of the issues, albeit not in as timely a fashion as it would have liked to do; (10) there is a likelihood that this motion being filed in the Bankruptcy Court was in an effort to achieve a result different than the one given in the letter opinion issued by the Department of Treasury, but at bottom the issue is one under § 346(j)(1) and thus the bankruptcy Court is arguably better situated to decide it, and in any event, this factor, if it favors the objecting party, must be weighed against all of the other relevant factors; (11) a jury trial is not involved, so this

factor is not relevant; (12) there are "non-debtor" parties present in the bankruptcy case and this Court has an extensive history with this case and knowledge regarding the interests of the "non-debtor" parties; and (13) there are no unusual or other significant factors.

On balance, therefore, the factors do not favor abstention, and accordingly, the Department of Treasury's Motion for Abstention is denied.

### B. Whether the Modified Gross Receipts Tax Constitutes a Tax "On or Measured By Income" under 11 U.S.C. § 346(j)

In the Motion, Greektown argues that the Modified Gross Receipts Tax ("MGRT") constitutes a tax "on or measured by income" under § 346(j)(1).

Section 1146(b) states:

> The Court may authorize the proponent of a plan to request a determination, limited to questions of law, by a State or local government unit charged with responsibility for collection or determination of a tax on or measured by income, of the tax effects under section 346 of this title and under the law imposing such tax, of the plan.

As noted, after Greektown formally requested technical advice from the Department of Treasury as provided for under § 1146(b), that Department found that the Modified Gross Receipts Tax is not a "tax on or measured by income," despite the "fact that certain deductions and exclusions from gross receipts are permitted in calculating" the tax base. While Greektown presumably could have appealed that decision, it chose to file the Motion.

11 U.S.C. § 346(j)(1) provides: "For purposes of any State or local law imposing a tax on or measured by income, income is not realized by the estate, the debtor, or a successor to the debtor by reason of discharge of indebtedness in a case under this title, except to the extent, if any, that such income is subject to tax under the Internal Revenue Code of 1986." It is undisputed that the term "tax on or measured by income" has been interpreted to encompass a

broader category of items or taxes than an "income tax." *In re Williams*, 173 B.R. 459, 463 (Bankr. E.D. N.Y. 1994) (explaining that Section 507(a)(7)(A) "covers *all taxes on or measured by income*, not just 'income taxes' which would encompass a more narrow group.") (emphasis in original).

The Michigan Business Tax Act ("MBTA") is a relatively new tax act that replaced the Single Business Tax Act, which had been in existence since the mid-1970s. The MBTA has four tax liability components: (1) a business income tax component ("BIT") (MCL § 208.1201(1)), (2) a modified gross receipts tax component ("MGRT") (MCL § 208.1203(1)), (3) a surcharge component that is inapplicable here (MCL § 208.1117(5)), and (4) specific taxes for insurance and finance entities, also inapplicable here (MCL § 208.1113(3)). It is undisputed that the BIT component is a tax "on or measured by income" for purposes of § 346(j)(1). The parties strongly disagree, however, regarding whether or not the MGRT should be characterized as a tax "on or measured by income" for purposes of § 346(j)(1). The issue here essentially boils down to whether the nature and effect of the deductions permitted under the MGRT so as to make the MGRT fall outside of the realm of a gross receipts tax and into the realm of a tax "on or measured by income." In order to decide that issue, it is necessary to first evaluate the structure of the MBT, and more specifically, the MGRT.

The business income component of the MBTA starts with federal taxable income from business activity. *See* MCL § 208.1201, providing for the levy on the business income tax base; MCL § 208.1105(2), defining "business income" to mean that part of federal taxable income derived from business activity; MCL § 208.1109(3), defining "federal taxable income" as taxable income set forth in 26 U.S.C. § 63 of the Internal Revenue Code.

The MGRT component of the MBTA starts with a base of "gross receipts," which is defined broadly as the entire amount received by the taxpayer from any activity whether in intrastate, interstate, or foreign commerce carried on for direct or indirect gain, benefit, or advantage to the taxpayer or to others. MCL § 208.1111(1). The amounts excluded from that definition include amounts received in any agency capacity for a principal for any of several purposes; proceeds less gain from disposition of certain property to the extent gain was included in federal taxable income; insurance proceeds, and proceeds from certain types of transactions characterized as loans involving automobile manufacturers, other types of manufacturers, and mortgage companies. MCL § 208.1111.

The base upon which the MGRT is imposed is "a taxpayer's gross receipts . . . less purchases from other firms." *See* MCL § 208.1203(3). A taxpayer calculating the MGRT base would start with Part 5 of the Michigan Worksheet 4700 to first calculate their "gross receipts" for purposes of the Michigan Business Tax Annual Return. From there, Worksheet 4700 provides for the deduction of "refunds from returned merchandise," "cash and in-kind discounts," and "trade discounts." Next, Worksheet 4700 provides for a phased-in deduction for amounts deducted as bad debts for federal income tax purposes that correspond to items of gross receipts included in the modified gross receipts tax base on line 73 thereof. The amount that could be deducted is 50% in 2008, 60% in 2009 and 2010, and 75% in 2011, and 100% in 2012 and thereafter. Other than those specific deductions, Worksheet 4700 also provides for many other deductions.[1]

---

[1] These deductions include, but are not limited to: (2) Interest and dividends derived from obligations or securities of the United States government, the state of Michigan, or any governmental unit of the state of Michigan; (2) Proceeds from an insurance policy, a settlement of claim, or a judgment in a civil action, less any proceeds that are includable in "federal taxable income" (as defined for MBT purposes); (3) Sales or use taxes collected from or reimbursed by a consumer or other taxes collected from or reimbursed by a purchaser and remitted to a local, state, or federal tax authority; (4) Amounts excluded from gross income of a foreign corporation engaged in the international operation of aircraft under IRC Section 883(a); (5) federal, state, and local tax refunds; (6) proceeds from the original issue of

8

At the end of Worksheet 4700, the taxpayer will have arrived at a number that constitutes "gross receipts" for MBT purposes, which is then carried over to the applicable line of the MBT Annual Return as gross receipts – the starting point of calculating the MGRT base on that form. Once a taxpayer arrives at "gross receipts," additional subtractions are provided on the MBT Annual Return, which spells out the numerous items that are included in the deduction for "purchases from other firms."

The first set of deductions is for (i) "inventory acquired during the tax year", (ii) "depreciable assets acquired during the tax year", (iii) "materials and supplies not included in inventory or depreciable property." Those deductions, among others, are all included in the definition of "purchases from other firms." *See* MCL § 208.1203(6). Next, the MBT provides for a deduction for "depreciable assets acquired during the tax year." Finally, the MBT provides for deductions of wages in certain cases, including "the actual cost of wages and salaries, benefits, worker's compensation, payroll taxes, withholding, or other assessments paid to or on behalf of a covered employee by the professional employer organization under a professional employer arrangement"; the compensation of personnel supplied to a "staffing company's" customers, including payroll tax and worker's compensation costs; and "payments made by taxpayers licensed under Article 25 or Article 26 of the Occupational Code to independent contractors licensed under Article 25 or 26." Those deductions are only a portion of the total deductions allowed in calculating the MGRT base.

Michigan courts, it would appear, have yet to weigh in on the character of the MGRT. MCL 208.1203(2) states that the MGRT is "tax levied and imposed . . . upon the privilege of doing business and not upon income or property." The Department of Treasury asks the court to

---

debt instruments; and (7) proceeds from original issue of stock or equity instruments, or equity issued by a regulated investment company as defined in IRC Section 851.

strictly construe this language and hold that the MGRT tax is a tax on gross receipts and not a tax "on or measured by income."

Although the language of MCL 208.1203(2) states that the MGRT is not a tax <u>on</u> income, this Court finds that the MGRT is a tax "measured by income" as contemplated by 11 U.S.C. § 346(j)(1). Although the calculation of MGRT starts out with "gross receipts", the varied and many deductions, credits, and exemptions available to taxpayers in calculating the MGRT base push the MGRT into the realm of a tax "measured by income." Section 346(j)(1) covers all taxes on or measured by income, not just "income taxes" which would encompass a more narrow group. *See In re Williams*, 173 B.R. 459, 463 (Bankr. E.D. N.Y. 1994). The Court wants to be clear that, although it holds that the MGRT is a tax "measured by income" for purposes of §346(j)(1), it is not holding that the MGRT is an income tax. The Michigan legislature clearly intended that the MGRT portion of the MBT would not be an income tax. However, the fact that the MGRT is a gross receipts tax does not exclude the possibility that it is a tax "measured by income" for the limited purposes set forth in § 346(j)(1).

The Department of Treasury relies heavily on *In re Raiman*, 172 B.R. 933 (9th Cir. B.A.P. 1994). In *Raiman*, the issue addressed by the court was whether a California tax statute on which assessments were based constituted a tax on or measured by income or gross receipts pursuant to 11 U.S.C. § 507(a)(7)(A). *Raiman*, 172 B.R. at 936. The *Raiman* court considered whether a tax on or measured by gross receipts "must be one which is measured by all receipts received by a taxpayer, without any items or transactions excluded." *Id*. at 937. That court relied heavily on the fact that the California tax allowed for exclusions, but no deductions. *Id*. at 938-39. The court explained that deductions "are wholly different than" exclusions because "[d]eductions represent costs incurred by all business" whereas "[e]xclusions are items that a

10

legislative body as a matter of policy has determined should not be included in gross receipts." *Id*. The court ultimately held that the California tax was a tax on or measured by gross receipts, despite the fact that it allowed for some exclusions.

Unlike the California tax in *Raiman*, which allowed only exclusions and no deductions, the MGRT allows both exclusions and deductions. Not only does the MGRT have deductions, those deductions are very similar to those permitted under the federal income tax. Moreover, those deductions are so numerous and varied as to make the MGRT fall within the realm of a tax "measured by income" under § 346(j)(1).

The Department of Treasury argues that the fact that sections of the Bankruptcy Code other than Section 346(j) refer to "taxes on or measured by income or gross receipts" (such as § 507(a)(7)(a), as was the section at issue in *Raiman*) militates toward a conclusion that Congress understood the distinction between the two very different types of taxes, and fully intended to include both kinds of taxes under the umbrella of creditor protection provided by § 507(a)(7), but chose to include a lesser universe of taxes for purposes of the exclusion available to debtors under § 346(j), as well as other sections of the Bankruptcy Code that are applicable to state laws imposing a tax "on or measured by income."

The Court disagrees with that argument. The MGRT is a tax "measured by income" for purposes of § 346(j)(1) because of the many deductions and exclusions it allows. The Michigan legislature clearly intended that the MGRT portion of the MBT would not be in income tax; however, as noted, the fact that the MGRT is a gross receipts tax does not exclude the possibility that it is a tax "measured by income" for the limited purposes set forth in § 346(j)(1).

Accordingly, this Court holds that the MGRT is a tax "measured by income" for purposes of § 346(j)(1), and therefore, Greektown's COD income is not subject to the MBT.

11

C.  Whether the Department of Treasury has authority under 11 U.S.C. § 346(j)(2) to Reduce Greektown's Tax Attributes

11 U.S.C. § 346(j)(2) provides:

> Whenever the Internal Revenue Code of 1986 provides that the amount excluded from gross income in respect of the discharge of indebtedness in a case under this tittle shall be applied to reduce the tax attributes of the debtor or the estate, a similar reduction shall be made under any State or local law imposing a tax on or measured by income to the extent such State or local law recognizes such attributes. Such State or local law may also provide for the reduction of other attributes to the extent that the full amount of income from the discharge of indebtedness has not been applied.

The first sentence of § 346(j)(2) provides for reduction of tax attributes for State tax purposes where those tax attributes are identified in an applicable section of the Internal Revenue Code and the State or local law imposing a tax on or measured by income recognizes such attributes. That portion is inapplicable here because Greektown is a partnership whose tax attributes are not reduced for federal tax purposes. The second sentence of § 346(j)(2) provides that "State or local law **may also provide for** the reduction of **other attributes** to the extent that the full amount of income from the discharge of indebtedness has not been applied." 11 U.S.C. § 346(j)(2) (emphasis added).

Greektown argues that, since no Michigan statute provides for the reduction of tax attributes, the second sentence of § 346(j)(2) does not require or permit such a reduction. The Department of Treasury argues that, although there is no Michigan statute providing for the reduction of tax attributes, the Michigan Legislature recognized tax attributes set forth in various provisions of the IRC when drafting the MBT, and that recognition is sufficient to allow the State to reduce Greektown's tax attributes to the extent that the full amount of income from the discharge of indebtedness has not been applied.

12

08-53104-mlo    Doc 3750    Filed 05/16/13    Entered 05/16/13 14:04:14    Page 12 of 15

The issue here is one of statutory construction. A court's analysis of a statute begins with the statutory language itself. It is a well-settled principle that, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Caminetti v. United States,* 242 U.S. 470, 485, 37 S. Ct. 192, 61 L.Ed. 442 (1917). Two exceptions exist regarding the application of a statute's plain language. As to the first exception, the United States Supreme Court held, in the case of *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L.Ed.2d 290 (1989), that "[t]he plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."

The second exception to the Plain Meaning Rule is triggered " 'when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense.'" *RCI Tech. Corp. v. Sunterra Corp.* (*In re Sunterra*), 361 F.3d 257, 265 (4th Cir.2004). As to both of these exceptions, the instances in which either should apply should be " 'exceptionally rare.' " *Id.* (quoting *Hillman,* 263 F.3d at 342). In *Sunterra,* the Court found that a literal reading of the statute would be consistent with the general bankruptcy policy constructed by Congress. In making the latter finding, the court explained that "if it is plausible that Congress intended the result compelled by the Plain Meaning Rule, we must reject an assertion that such an application is absurd. *Id.* at 268 (citing *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 304 (4th Cir.2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 122 S. Ct. 941, 151 L.Ed.2d 908 (2002)).

The Court must presume every word in a statute to have meaning and effect must be given to all words in a statute "to avoid an interpretation which would render words superfluous or redundant." *Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001) (citing *Astoria Fed. Sav. &*

13

*Loan Ass'n v. Solimino*, 501 U.S. 104, 112, 111 S. Ct. 2166, 115 L.Ed.2d 96 (1991); *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998)).

Here, the statutory language of the second sentence of § 346(j)(2) is clear and unambiguous. When the language of the statute is considered, it is clear that a State or local law must "provide for" the reduction of "other attributes" in order for such attribute reduction to be permitted in the absence of an Internal Revenue Code requirement that the attributes be reduced. There is no Michigan or local law that provides for the reduction of "other attributes," and the fact that Michigan law recognizes tax attributes does not mean that it "provides for" their reduction. *See Rake v. Wade*, 508 U.S. 464, 473-74 (1993) ("provides for" is "most natural[ly] read and is "commonly understood" to mean "make a provision for"); *Lawson v. Kanawha County Court*, 92 S.E. 786, 789 (W. Va. 1917) ("The phrases, 'prescribed by law' and 'provided by law,' . . . generally mean prescribed or provided by statutes); *see also* Black's Law Dictionary at 1224 (6th ed. 1990) (defining "provided by law" as "prescribed or provided by some statute."). The State law simply has not provided for reduction of other attributes and thus, § 346 does not permit the Department of Treasury to reduce Greektown's tax attributes.

### IV. CONCLUSION

For the reasons set forth herein, the Court concludes that (1) abstention is inappropriate in this case; (2) the MGRT is a tax "measured by income for purposes of § 346(j)(1), and therefore, Greektown's COD income is not subject to the MBT; and (3) Greektown's basis in assets, net operating losses, or any other tax attributes cannot be reduced for MBT purposes due to the fact that all or substantially all of Greektown's COD Income is not subject to MBT. Greektown shall prepare and present an appropriate order.

**Signed on May 16, 2013**

                                                                                   /s/ Walter Shapero
                                                                           Walter Shapero
                                                                           United States Bankruptcy Judge